2025 IL App (2d) 250169-U
No. 2-25-0169
Order filed July 29, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 25-CF-709 |
| | ) | |
| KEVAN J. COLE, | ) | Honorable |
| | ) | Julia A. Yetter, |
| Defendant-Appellant, | ) | Judge, Presiding. |

_____

JUSTICE HUTCHINSON delivered the judgment of the court.
Presiding Justice Kennedy and Justice Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court did not err in ordering defendant detained pretrial where the State proved by clear and convincing evidence that (1) the proof was evident and the presumption great that defendant committed the offenses as charged; (2) defendant's pretrial release would pose a threat to the victim and the community at large; and (3) no condition or combination of conditions would mitigate the threat posed by defendant.

¶ 2    Defendant, Kevan Cole, appeals from the trial court's order denying his pretrial release pursuant to 725 ILCS 5/110-6.1 (West 2024) and its subsequent denial of his motion for relief under Illinois Supreme Court Rule 604(h)(2). Ill. S. Ct. R. 604(h)(2) (eff. April 15, 2024). For the reasons that follow, we affirm.

¶ 3                                      I. BACKGROUND

¶ 4      On March 30, 2025, defendant was charged with residential burglary (720 ILCS 5/19-3(a) (West 2024)), trespass to residence-knowing one or more persons are present (720 ILCS 5/19-4(a)(2) (West 2024)), two counts of possession of a weapon after previously convicted of forcible felony (720 ILCS 5/24-1.1(a) (West 2024)), possession of a stolen firearm (720 ILCS 5/24-3.8(a) (West 2024)), two counts of aggravated possession of a weapon (720 ILCS 5/24-1.6(a)(1) (West 2024)), and possession of a firearm while FOID card invalid or not eligible (430 ILCS 65/2(a)(1) (West 2024)).

¶ 5      The State filed a petition to detain defendant and a hearing was held. People's exhibit No. 1, a Geneva Police Department synopsis, was admitted. The synopsis detailed a March 22, 2025, incident in which police were called to a residence in Geneva for a report of theft. The victim, C.H., told police that on the previous evening, March 21, 2025, Hailey Myers came to his home at approximately 8:50 p.m. to hang out. C.H. fell asleep at around 11:00 p.m. When he woke up the following morning between 5:00 a.m. and 6:00 a.m., Myers was gone and his front door was open. He noticed that his kitchen cabinets were also open. When he checked the cabinets, he realized his Glock 26 9mm pistol and two fully loaded 10 round magazines containing 9mm hollow point rounds were missing. Also missing from the residence were C.H.'s cell phone, wallet, and home keys, his father's wedding ring, a tablet, $200 in cash, a pair of Airforce One shoes, three hats, five hoodies, and a Bluetooth speaker. He told police he believed Myers to be responsible.

¶ 6      C.H.'s residence is located above a business called Country Village Meats. As owner of the entire property, Country Village Meats has surveillance cameras placed throughout the property, including the hallway outside C.H.'s front door. Police reviewed the surveillance footage and observed the following events. At approximately 8:50 p.m. on March 21, 2025, C.H. exited

his residence to let Myers in through an external door to the hallway which must be opened from inside. C.H. lead Myers to his apartment. At approximately 4:15 a.m. on March 22, 2025, Myers is seen exiting the apartment before slowly closing the door, but leaving it slightly cracked open. She is then seen exiting the external hallway door where she places an object to keep it propped open.

¶ 7     At approximately 4:40 a.m., Myers is seen reentering the apartment hallway with a black male. The pair walk through the hallway and stand in front of C.H.'s apartment door. Myers puts her ear to the door appearing to be listening for sound or movement inside. The man with Myers is seen moving his head back and forth between the door and the hallway. Myers then motions the man into the apartment with her. Myers was carrying a water bottle and a roll of paper towels. The male is not seen carrying anything.

¶ 8     At approximately 5:10 a.m., they exit the apartment. Myers is seen carrying a large quantity of clothing and other items. The black male is observed to have something tucked in his waistband. He keeps his hands near the waistband throughout the entirety of the video. The subjects then exit the apartment and walk to the north end parking lot at the rear of the building where the enter a black Infiniti, license plate number EW14035, and drive away.

¶ 9     A critical reach bulleting was disseminated to surrounding law enforcement agencies with special attention to the Elgin Police Department. Elgin Police Detective Holmes emailed Geneva Police a report and still images of defendant. Detective Holmes stated that Elgin Police had previous contact with defendant on March 17, 2025, and recorded that he was driving a black Infiniti with license plate number EW14035. The image provided by Detective Holmes closely resembled the subject seen in the security camera footage at C.H.'s residence. A Flock Camera hit on the license plate on March 22, 2025, showing the black Infiniti traveling southbound on Kirk

Road from Division Street in Geneva, approximately four minutes before Myers initially left C.H.'s apartment. A LEADS inquiry indicated that defendant is the owner of the black Infiniti bearing Illinois license plate registration number EW14035.

¶ 10     On March 29, 2025, Geneva Police spoke with Myers. She stated that she and defendant entered C.H.'s apartment after defendant made threatening statements to her. Defendant asked Myers if C.H. would shoot him if the entered the apartment. Myers told defendant that he would not. Myers stated that she believed this is how defendant deduced that C.H. had a gun in the apartment. Myers believed that defendant would hurt her or her family if she did not enter the apartment with him. Once inside the apartment, they found C.H.'s gun in the kitchen cabinet and defendant placed it in his waistband. After leaving the apartment, they got in defendant's black Infiniti where defendant placed the gun in the backseat. They ended up at a hotel in Elgin where Myers stated that she last saw the gun. She recounted that there were multiple unknown persons at the hotel and did not know who ended up in possession of the gun.

¶ 11     The State proffered defendant's prior criminal convictions for unlawful possession of a controlled substance. Defendant's probation on that case was unsuccessfully terminated. Defendant also has convictions for intimidation, delivery of a controlled substance, aggravated criminal sexual abuse, and failure to register as a sex offender. His requirement to register as a sex offender expired on November 20, 2018. Defendant scored a three out of six on the new criminal activity scale and the same as to failure to appear scale on the risk assessment.

¶ 12     The defense argued that, if released, defendant would reside with his parents in Elgin. He has been receiving disability related to mental health since 2009. He goes to Ecker Center every three months for medication and talk therapy. Defendant claimed to be compliant with his medication regimen.

¶ 13    The trial court granted the State's petition to detain defendant. On April 3, 2025, defendant filed a motion for relief pursuant to Rule 604(h)(7) and argued that the State failed to prove by clear and convincing evidence that (1) the proof was evident and the presumption great that defendant committed the offenses as charged; (2) defendant's pretrial release would pose a threat to the victim and the community at large; and (3) no condition or combination of conditions would mitigate the threat posed by defendant.

¶ 14    On April 16, 2025, following a hearing on defendant's motion, the trial court denied the motion finding that detention remained the least restrictive condition and ordered his continued detention.

¶ 15    Defendant timely appealed. Pursuant to Illinois Supreme Court Rule 604(h)(7), defendant has elected not to file a memorandum with his notice of appeal. Accordingly, defendant's motion for relief shall serve as his argument in this appeal. See Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024) ("The motion for relief will serve as the argument of the appellant on appeal. *** Issues raised in the motion for relief are before the appellate court regardless of whether the optional memorandum is filed.").

¶ 16                                II. ANALYSIS

¶ 17    Where parties to a pretrial detention hearing proceed solely by proffer, a reviewing court is not bound by the trial court's findings and our review is *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 51. As parties here proceeded solely by proffer, and we as the reviewing court stand in the same position as the trial court, our review is accordingly *de novo*. In other words, we may "conduct [our] own independent review of the proffered evidence and evidence otherwise documentary in nature." *Id.* The purpose of this independent review is to determine whether the

evidence identified in the parties' proffers is sufficient to meet the statutory factors set forth in 725 ILCS 5/110-6.1 (West 2024).

¶ 18 Under Article 110 of the Code of Criminal Procedure of 1963 the Code), all defendants are presumed to be entitled to pretrial release. 725 ILCS 5/110-2(a) (West 2024). Upon verified petition by the State, the trial court shall hold a hearing under 725 ILCS 5/110-6.1 of the Pretrial Fairness Act (the Act). In order to be denied pretrial release, the State must prove by clear and convincing evidence that (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense; (2) the defendant poses a real and present threat to the safety of any person or persons or the community; and (3) no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community. 725 ILCS 5/110-6.1(e)(1)-(3) (West 2024). The State may present evidence at the hearing by way of proffer based upon reliable information in order to meet its burden of proof. 725 ILCS 5/110-6.1 (West 2024). The statute does not include any specific language outlining specifically what type of evidence the State must put forward. *Morgan*, 2025 IL 130626, ¶ 25. Rather, the State must proffer sufficient facts to prove each prong by clear and convincing evidence. *Id.*

¶ 19 As stated above, defendant's motion for relief argues that the State failed in presenting the requisite proof as to all three prongs. We will begin with the first prong.

¶ 20 Of defendant's charges, residential burglary (720 ILCS 5/19-3(a)) and possession of a weapon after previously convicted of forcible felony (720 ILCS 5/24-1.1(a)) constitute qualifying offenses under the Act. See 725 ILCS 5/110-6.1(a)(1.5), (6) (West 2024).

¶ 21 "A person commits residential burglary when he or she knowingly and without authority enters or knowingly and without authority remains within the dwelling place of another, or any part thereof, with the intent to commit therein a felony or theft." 720 ILCS 5/19-3(a) (West 2024).

The State's proffer showed Myers leaving C.H.'s residence at approximately 4:40 a.m., leaving the doors propped open so she could reenter with defendant. The pair are seen reentering the apartment before emerging with items consistent with what C.H. reported stolen, including what appeared to be a gun tucked into defendant's waistband. Myers and defendant then leave the scene in a black Infiniti registered to defendant. Defendant's car was identified through a Flock Camera hit on his license plates near C.H.'s apartment approximately four minutes before Myers initially exited. Police familiar with defendant were able to identify him as the man in the video burglarizing C.H.'s apartment with Myers. Based on the evidence presented through the State's proffer, we find that the State satisfied its burden of clear and convincing evidence that defendant committed the detainable offense of residential burglary.

¶ 22    Moving to the second prong, defendant contends that the State failed to prove that he poses a threat to the safety of the victim and the community. He argues that he has a scant criminal history and that his most recent conviction was for a non-violent drug offense. Additionally, he argues that he poses no danger to the victim because he had no connection to him and is an older man who has been on disability since 2009.

¶ 23    In making a determination of a defendant's dangerousness, a trial court may consider, among other things: (1) the nature and circumstances of any charged offense, including whether it is a crime of violence or a sex crime, or involved a weapon; (2) the defendant's characteristics and history, including any criminal history indicative of violent, abusive, or assaultive behavior, and any psychological history indicative of a violent, abusive, or assaultive nature, and the lack of any such history; (3) the identity of the person believed to be at risk from the defendant and the nature of the threat; (4) statements by the defendant and the circumstances of such statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of any victim or

complaining witness; (7) the defendant's access to any weapon; (8) whether the defendant was on probation, parole, or the like at the time of the charged offense or any other arrest or offense; and (9) any other factors that have a reasonable bearing on the defendant's propensity for violent, abusive, or assaultive behavior, or the lack of such behavior. 725 ILCS 5/110-6.1(g) (West 2024).

¶ 24    Defendant is charged here with a litany of crimes involving residential burglary and the theft of a firearm by a convicted felon. Contrary to defendant's argument, he has a criminal history indicative of violent behavior including intimidation and aggravated criminal sexual abuse. While the record does seem to support defendant's assertion that he has no connection to the victim, he does know exactly where the victim lives and how to access his residence. Defendant is known to have access to weapons, presumably including the firearm he stole from the victim's apartment. That firearm has yet to be recovered and was last seen in defendant's possession. Defendant is a 55-year-old man with certain mental health disabilities, yet he was able to burglarize the victim's apartment in the early hours on March 22, 2025, with Myers and steal multiple items, including a handgun. For these reasons, we find that the State proved by clear and convincing evidence that defendant's pretrial release would pose a threat to the victim and the community at large

¶ 25    Finally, defendant contends that the State failed to prove by clear and convincing evidence that no condition or combination of conditions would mitigate the threat posed by defendant. He argues that his ability to reside with his parents in Elgin coupled with electronic home monitoring would suffice to mitigate any threat he poses.

¶ 26    Under section 110-6.1(g)(3) of the Code, an order for pretrial detention must be based on, among other things, clear and convincing evidence that "no condition or combination of conditions" of pretrial release can mitigate the real and present threat to safety posed by the defendant. *Id.* § 110-6.1(g).  If the trial court finds that the State proved a valid threat to someone's

safety or the community's safety, it must then determine what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community ***." *Id.* § 110-5(a). In making this determination, the trial court should consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; (4) the nature and seriousness of the specific, real and present threat to any person that would be posed by the defendant's release; and (5) the risk that the defendant will obstruct or attempt to obstruct the criminal justice process. *Id.* No single factor is dispositive. *Id.*

¶ 27    As stated above, defendant entered the victim's apartment while he was asleep with the intent to burglarize the residence. He stole a firearm that has not yet been recovered. As recently as 2023, defendant had a probation terminated unsuccessfully. This recent history of noncompliance with the terms and conditions ordered by a court is indicative of defendant's propensity for noncompliance with any conditions that may be imposed if he were released in the present case. Although electronic home monitoring may restrict defendant's movements somewhat, the record shows that he has access to a vehicle that he had no issue using in the early morning hours of March 22, 2025, to commit the charged offenses. And, perhaps most importantly, he has access to a firearm that he stole from the victim's apartment; a weapon that could potentially be used to commit further crimes. As such, we find that the State proved by clear and convincing evidence that no condition or combination of conditions would mitigate the threat posed by defendant.

¶ 28                                III. CONCLUSION

¶ 29    For the reasons stated, the judgment of the circuit court of Kane County is affirmed..

¶ 30    Affirmed.